UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTHA FRANCO,<br><br>    Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Case No.: 1:18-cv-1059 - JLT<br><br>ORDER REMANDING THE ACTION PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g)<br><br>ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF MARTHA FRANCO AND AGAINST DEFENDANT, THE COMMISSIONER OF SOCIAL SECURITY |

Martha Franco asserts she is entitled to supplemental security income under Title XVI of the Social Security Act. Plaintiff seeks judicial review of the decision to deny benefits, arguing the administrative law judge erred in evaluating the medical record. Because the ALJ erred in evaluating the record related to Plaintiff's mental impairments, the matter is **REMANDED** for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

**BACKGROUND**

In May 2014, Plaintiff filed her application for benefits, alleging disability due to her mental condition, diabetes, high blood pressure, arthritis, gastritis, left breast pain, incontinence, and a heart murmur. (Doc. 10-7 at 4; Doc. 10-8 at 6) The Social Security Administration denied the application at the initial level and upon reconsideration. (*See generally* Doc. 10-4) Plaintiff requested a hearing and testified before an ALJ on April 4, 2017. (*See* Doc. 10-3 at 11, 30) The ALJ determined Plaintiff was not disabled under the Social Security Act and issued an order denying benefits on August 1, 2017. (*Id.*

at 11-22) Plaintiff filed a request for review of the decision with the Appeals Council, which denied her request on June 6, 2018. (*Id.* at 2-4) Therefore, the ALJ's determination became the final decision of the Commissioner of Social Security.

## **STANDARD OF REVIEW**

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)). The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## **DISABILITY BENEFITS**

To qualify for benefits under the Social Security Act, Plaintiff must establish she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). The burden of proof is on a claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). If a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial

gainful employment. *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## ADMINISTRATIVE DETERMINATION

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The process requires the ALJ to determine whether Plaintiff (1) is engaged substantial gainful activity, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level. *Id.* The ALJ must consider testimonial and objective medical evidence. 20 C.F.R. §§ 404.1527, 416.927.

Pursuant to this five-step process, the ALJ determined Plaintiff had not engaged in substantial gainful activity since her application date of May 19, 2014. (Doc. 10-3 at 13) Second, the ALJ found Plaintiff's severe impairments included: "major depression with psychotic features, adjustment disorder with depressed mood, anxiety disorder, antisocial personality disorder, and posttraumatic stress disorder." (*Id.*) The ALJ noted Plaintiff also alleged physical impairments, but found they were not severe. (*Id.* at 13-14)

At step three, the ALJ determined Plaintiff's impairments did not meet or medically equal a Listing. (Doc. 10-3 at 15) Next, the ALJ found:

> [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: limited to simple and routine tasks and needs a cane to ambulate for more than 30 minutes.

(*Id.* at 16) At step four, Plaintiff did not have past relevant work for the ALJ to evaluate with this residual functional capacity. (*See id.* at 21) However, at step five the ALJ found "there are jobs that exist in significant numbers in national economy that the claimant can perform." (*Id.*) Thus, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act from May 19, 2014, through the date of the decision. (*Id.* at 22)

## DISCUSSION AND ANALYSIS

Plaintiff argues the ALJ erred at step two by finding her physical impairments were not severe. (Doc. 16 at 14-15) In addition, Plaintiff asserts the ALJ erred in reviewing the opinions related to her

3

mental limitations and rejecting the limitations identified by her treating physician. (*Id.* at 10-14) The Commissioner argues the ALJ properly evaluated the medical evidence and requests that the Court affirm the decision. (*See generally* Doc. 23 at 4-13)

### A. Plaintiff's Physical Impairments and the Step Two Findings

The inquiry at step two is a *de minimus* screening "to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996), citing *Bowen v. Yucket*, 482 U.S. 137, 153-54 (1987)). The purpose is to identify claimants whose medical impairment makes it unlikely they would be disabled even if age, education, and experience are considered. *Bowen*, 482 U.S. at 153. A claimant must make a "threshold showing" (1) she has a medically determinable impairment or combination of impairments and (2) the impairment or combination of impairments is severe. *Id.* at 146-47; *see also* 20 C.F.R. § 416.920(c). Thus, the burden of proof is on the claimant to establish a medically determinable severe impairment that significantly limits her physical or mental ability to do basic work activities, or the "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(a).

Plaintiff argues the ALJ erred by finding her "leg length discrepancy, plantar fasciitis, and lumbar spine pain [were] non-severe." (Doc. 16 at 14) Plaintiff asserts:

> Dr. Tobigo-On and Dr. Herr both opined that Plaintiff is limited to less than a full range of sedentary work with a limitation to a maximum sitting of less than six hours, maximum lifting of ten pounds, and two hours combined standing and walking. Ar. 429, 522.
>
> The ALJ rejected these assessments as inconsistent with normal examination findings noted by these physicians. Ar. 13.

(Doc. 16 at 15) According to Plaintiff, "the ALJ's conclusion is not supported by substantial record evidence, because he merely picked and chose through only the normal findings which support his assessment, while ignoring significantly more evidence of abnormal findings that are consistent with the physicians' assessments." (*Id.*) Specifically, Plaintiff asserts, "the ALJ ignored X-Ray, MRI, and range of motion testing evidence that shows significant abnormalities." (*Id.*, citing AR 481, 637, 691, and 698 [Doc. 10-10 at 90; Doc. 10-12 at 56, 110; Doc. 10-13 at 4])

The Commissioner argues the ALJ properly determined Plaintiff's physical impairments were not severe at step two. (Doc. 23 at 10-11) The Commissioner observes that Plaintiff did not identify leg length discrepancy, plantar fasciitis, or lumbar spine pain as impairments in her application, yet "the

4

ALJ still considered Plaintiff's physical impairments and noted she used a cane during the hearing." (*Id.* at 11) In addition, the Commissioner asserts that, contrary to Plaintiff's assertion, "The ALJ discussed imaging evidence regarding Plaintiff's leg length discrepancy in that her right leg is shorter than the left leg, mild to moderate face joint degeneration in the lower lumbar spine and mild tendinosis in the right hip." (*Id.* citing AR 13, 481, 483, 691 [Doc. 10-3 at 14; Doc. 10-10 at 90, 92; Doc. 10-12 at 110]) According to the Commissioner, "As the ALJ noted, there was very little objective support based on the physical examinations during the relevant period, including full muscle strength and normal sensation that supported their assessments." (*Id.* at 12)

### 1. Evidence considered by the ALJ

As an initial matter, the Court notes that AR 637—which Plaintiff asserts includes imagining or range of motion testing (Doc. 16 at 15)— does not include any objective signs or clinical findings. Instead, the exhibit includes only a list of Plaintiff's medication history as of June 25, 2015. (*See* Doc. 10-12 at 54) Thus, this exhibit does not support Plaintiff's assertion that "[t]he ALJ ignored X-Ray, MRI, and range of motion testing evidence…" In addition, the exhibits identified by Plaintiff do not include any range of motion testing that the ALJ failed to address. (*See* Doc. 10-10 at 90; Doc. 10-12 at 56, 110; Doc. 10-13 at 4)

Moreover, contrary to Plaintiff's assertion, the ALJ clearly addressed the imagining stating: "[D]iagnostic imaging revealed a leg length discrepancy, with the right leg shorter than the left leg, as well as mild to moderate facet joint degeneration in the lower lumbar spine and mild tendinosis in the right hip." (Doc. 10-3 at 14) Despite these findings, the ALJ noted that Plaintiff's "examinations revealed only an abnormal gait and paralumbar tenderness throughout the relevant period." (*Id.*) Thus, Plaintiff fails to show the ALJ ignored probative evidence related to her physical impairments at step two of the evaluation.

### 2. Rejection of the opinions of Drs. Tabigo-On and Herr

Plaintiff contends the ALJ erred in rejecting the opinions of Drs. Tobigo-On and Herr, who "opined that Plaintiff is limited to less than a full range of sedentary work with a limitation to a maximum sitting of less than six hours, maximum lifting of ten pounds, and two hours combined standing and walking." (Doc. 16 at 15)

Notably, a physician's opinion is not binding upon the ALJ, and may be discounted whether it is contradicted by another physician. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). An ALJ may reject an *uncontradicted* opinion of a treating or examining medical professional only by identifying a "clear and convincing" reason. *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1996). In contrast, a *contradicted* opinion of a treating or examining professional may be rejected for "specific and legitimate reasons that are supported by substantial evidence in the record." *Id.*, 81 F.3d at 830. When there is conflicting medical evidence, "it is the ALJ's role to determine credibility and to resolve the conflict." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Here, the opinions of Drs. Tobigo-On and Herr conflicted with the opinions of Drs. Sachdeva, De la Rosa, and Bobba. (*See* Doc. 10-3 at 14) Thus, the ALJ was required to set forth specific and legitimate reasons for rejecting the limitations, supported by substantial evidence in the record.

The ALJ indicated he gave "little weight" to the opinions of Drs. Tabigo-On and Herr "because they are inconsistent with the examination findings as noted by both [physicians]…" (Doc. 10-3 at 14) Importantly, an ALJ may reject the limitations identified by a physician where they are inconsistent with the record, including the physician's own findings. *See Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003) (opinion properly rejected where physician's own findings do not support the opinion); *see also Khounesavatdy v. Astrue*, 549 F. Supp. 2d 1218, 1229 (E.D. Cal. 2008) ("it is appropriate for an ALJ to consider… the inconsistency of conclusions with the physician's own findings, in rejecting a physician's opinion"). The ALJ found "although the claimant presented with an abnormal gait and paralumbar tenderness throughout the relevant period, she exhibited otherwise normal findings, including full muscle strength and normal sensation." (Doc. 10-3 at 14) Because the ALJ identified clinical findings that were inconsistent with the limitations identified by Drs. Herr and Tabiago, the ALJ identified a legally sufficient reason to reject their conclusions.

3. <u>Substantial evidence supports the ALJ's determination</u>

Plaintiff contends the ALJ's reported error in reviewing the evidence at step two resulted in a physical residual functional capacity that is "not supported by substantial record evidence." (Doc. 16 at 15) The Commissioner maintains there was "no ALJ error in the RFC regarding her physical limitations." (Doc. 23 at 13)

|   | The term "substantial evidence" "describes a quality of evidence … intended to indicate that the evidence that is inconsistent with the opinion need not prove by a preponderance that the opinion is wrong." SSR 96-2p, 1996 SSR LEXIS 9 at *8. "It need only be such relevant evidence as a reasonable mind would accept as adequate to support a conclusion that is contrary to the conclusion expressed in the medical opinion." *Id.* Previously, this Court explained: "The role of this Court is not to second guess the ALJ and reevaluate the evidence, but rather it must determine whether the decision is supported by substantial evidence and free of legal error." *Gallardo v. Astrue*, 2008 WL 4183985 at *11 (E.D. Cal. Sept. 10, 2008); *see also German v. Comm'r of Soc. Sec.*, 2011 WL 924737 at *3 (E.D. Cal. Mar. 14, 2011) (explaining "[i]t is not for this court to reevaluate the evidence").

The ALJ indicated he gave "great weight" to the opinion of Dr. Mickey Sachdeva, who performed a consultative examination in December 2016. (*See* Doc. 10-3 at 14) Dr. Sachdeva found Plaintiff did not exhibit any muscle spasms and had "no tenderness to palpation in the midline or paraspinal areas" in her back. (Doc. 10-10 at 24) In addition, he found Plaintiff had a negative straight leg test, and her range of motion in her spine was within normal limits. (*Id.*) Dr. Sachdeva determined Plaintiff had a reduced range of motion in her hips with forward flexion, abduction, and adduction; but a normal range in her hips with backward extension, internal rotation, and external rotation. (*Id.*) He opined Plaintiff had "good active motion" and her motor strength was "5/5 in all extremities." (*Id.* at 25) Dr. Sachdeva noted Plaintiff's senses were grossly intact and Plaintiff had normal reflexes. (*Id.*) Further, he observed that Plaintiff's gait was "[w]ithin normal limits." (*Id.*) Dr. Sachdeva concluded Plaintiff could lift and carry 50-100 pounds occasionally and up to 50 pounds frequently; ambulate without a cane or other assistive device; continuously balance and stoop; and frequently climb, kneel, crouch, and crawl." (*Id.* at 26) Dr. Sachdeva also opined, "In a total eight hour work day she can sit for eight hours, stand for six hours and walk for six hours due to right hip pain." (*Id.*) Notably, these limitations were based upon Dr. Sachdeva's own "objective clinical findings" (*id.* at 25), and findings from an examining physician that "rest[] on independent examination" constitute substantial evidence); *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (when an examining physician provides independent clinical findings, such findings are substantial evidence).

Likewise, the ALJ's physical RFC is supported by the opinions of Drs. De la Rosa and Bobba,

non-examining physicians who reviewed the record and determined Plaintiff "does not have a severe physical impairment." (Doc. 10-3 at 14, citing Exh. 1A, p.9; Exh. 3A, p. 7 [Doc. 10-4 at 10, 22]) The ALJ gave these opinions "great weight." (*Id.*) Because these opinions are consistent with the conclusions of Dr. Sachdeva—who did not identify any functional limitations with sitting, standing, or walking— these opinions are also substantial evidence to support of the RFC identified by the ALJ. *See Tonapetyan*, 242 F.3d 1149 (the opinions of non-examining physicians "may constitute substantial evidence when … consistent with other independent evidence in the record").

Consequently, substantial evidence supports the ALJ's determination at step two that Plaintiff's physical impairments are not severe, as well as the corresponding physical RFC, which included a limitation for a cane to give Plaintiff the benefit of the doubt, despite the fact that "none of the available medical evidence indicates that the claimant requires a cane for ambulation." (*See* Doc. 10-3 at 13)

**B.     Evaluation of Dr. Morales' Opinion and Plaintiff's Mental Impairments**

Plaintiff asserts that "[t]he ALJ erred in weighing the medical opinion evidence concerning Plaintiff's mental limitations." (Doc. 16 at 10) Plaintiff asserts "the ALJ improperly rejected the opinions of Plaintiff's treating provider, Dr. Morales." (*Id.* at 11) Because the limitations identified by Dr. Morales were contradicted by the findings of other physicians, the ALJ was required to identify specific and legitimate reasons to support his findings. *Lester*, 81 F.3d at 830.

In addressing the medical evidence related to Plaintiff's mental impairments and the opinions from Dr. Morales, the ALJ observed:

> The record reflects a history of major depressive disorder (Ex.3F). In late April 2014, the claimant presented to Jean Luckman, a clinical social worker, and Ramon Garcia, M.D., with the California Department of Corrections and Rehabilitation, for an initial evaluation after her release from prison (Exs.5F/7, 8; 13F/4, 5). She indicated that she had been taking Zoloft and reported symptoms of poor sleep, crying all the time, and feelings of desperation; Dr. Garcia continued the claimant's use of Zoloft and started her on buspirone and trazodone for treatment of her major depression (Ex.5F/8). The claimant followed up with Ms. Luckman in late May 2014 and asserted she took her medications with good results (Ex.5F/6). Ms. Luckman noted that the claimant presented as stable, oriented, and alert (Ex.5F/6).
>
> Several weeks later, in mid-June 2014, the claimant met with Eduardo R. Morales, M.D., with California Department of Corrections and Rehabilitation and stated that she was unable to sleep with her current medication combination (Ex.13F/l). She described her mood as "very sad and crying," endorsed auditory hallucinations in the form of an intelligible voice calling her name, and stated that she experienced recurrent distressing memories related to her time in prison with intense psychological reactions, persistent avoidance of stimuli, and recurrent distressing dreams (Ex.13F/1, 2). The claimant

further reported symptoms of increased irritability, anhedonia, high anxiety level, and normal energy level (Ex.13F/l ). A mental status examination revealed normal psychomotor activity; full orientation; full affect; sad, tearful, and anxious demeanor; impaired concentration; normal speech; hypervigilance; generally goal directed thought processes; racing thoughts; paranoid delusions; no preoccupations, and impaired insight and judgment (Ex.13F/l, 2). Dr. Morales diagnosed the claimant with major depression with psychotic features as well as PTSD, and he increased the doses of Zoloft and trazodone (Ex.13F/l).

The claimant continued to meet with Dr. Morales from July 2014 through February 2017, during which time her complaints included difficulty sleeping, depression, tearfulness, irritability, easily angered, anxiety, paranoia, and feeling sedated (Exs.13F/6-48; 23F). Based on these complaints, Dr. Morales adjusted the claimant's medication regimen at almost every visit; she asserted that an adjustment had improved her symptoms but would then complain at the next visit that her symptoms had again worsened. Mental status examinations conducted between July 2014 and February 2017 revealed findings nearly identical to those noted by Dr. Morales during the June 2014 visit, with the only major changes being the claimant's lack of reported hallucinations as of July 2014 and her reported mood, which varied between depressed, improved, and happy.
…

Dr. Morales opined from June 2014 to May 2016 that the claimant could not seek employment and could not work full time or with a modified schedule (Exs.13F; 23F/l-7). Between June 2016 and February 2017, Dr. Morales did not specifically opine that the claimant could not work; however, he consistently opined that her anxiety level was so high that task completion was impaired, her mood was so unstable that any attempt at supervision could lead to emotion decompensation, and her concentration was very impaired (Ex.23F/8-22). In November 2014 and December 2016, Dr. Morales opined that the claimant had moderate to marked limitation in nearly all areas of understanding and memory, sustained concentration and persistence, social interaction, and adaptation (Exs. l7F, 21).

(Doc. 10-3 at 18-19)

The ALJ indicated he gave "little weight to all of Dr. Morales's opinions because none of them is consistent with his treatment notes, which reflect only conservative mental health treatment with medication and improvement of symptoms with medication." (Doc. 10-3 at 19, citing Exhs. 13F and 23F) In addition, the ALJ found "that Dr. Morales's opinions are highly inconsistent with the findings and opinions of Dr. Cohn, who examined the claimant only several months after she began treatment with Dr. Morales, as well as with those of Dr. Michiel, who examined the claimant only one month prior to Dr. Morales's most recent examination in February 2017." (*Id.*, citing Exhs. 8F, 11F)

### 1. Treatment provided

This Court and others have determined treatment such as Plaintiff received—including continual adjustments to her medication, as acknowledged by the ALJ—may not be characterized as conservative mental health treatment. *See, e.g., Williams v. Berryhill*, 2018 WL 4204798 at *4 (E.D.

9

Cal. Aug. 31, 2018) (finding it "not apparent that mental health treatment that includes psychotropic medications and treatment from a psychiatrist is conservative"); *Gentry v. Colvin*, 2013 2013 WL 6185170 at *12 (E.D. Cal. Nov. 26, 2013) (observing that prescription mental health treatment "is not conservative in the same manner as over the counter [medication]" and finding no evidence that the claimant's prescription medication was conservative); *Wyatt v. Colvin*, 2016 WL 6102335 at *6 (C.D. Cal. Oct. 19, 2016) ("a mental health medication regimen, involving numerous variations of medications and treatment and spanning multiple years is not fairly characterized as 'conservative care.'"). As the ALJ acknowledged, Plaintiff was prescribed various medications, including Zoloft, buspirone, and trazodone; and Dr. Morales "adjusted the claimant's medication regimen at almost every visit" from July 2014 through February 2017. (*See* Doc. 10-3 at 19) Thus, it is not clear the treatment Plaintiff received was conservative, and the treatment provided did not support the ALJ's decision to give less weight to the opinions of Dr. Morales.

### 2. Effectiveness of treatment

The ALJ indicates that he gave less weight to the opinion of Dr. Morales in part because Plaintiff showed "improvement of symptoms with medication." (Doc. 10-3 at 19, citing Exhs. 13F and 23F) Thus, the ALJ implies that the opinions of Dr. Morales are inconsistent with his own treatment notes. However, the ALJ failed to cite specific evidence supporting the conclusion that Plaintiff's symptoms improved. Instead, the ALJ cited broadly to approximately 70 pages of treatment notes, without identifying any clinical findings or observations from Dr. Morales regarding Plaintiff's mental status. (*See* Doc. 10-10 at 42-89 [Exh. 13F]; Doc. 10-13 at 13-22 [Exh. 23F]) This is inadequate to satisfy the ALJ's burden to "set[] out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *See Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986).

The ALJ's own summary of the record indicates that Plaintiff's improvements waxed and waned, as Plaintiff "asserted that an adjustment had improved her symptoms but would then complain at the next visit that her symptoms had again worsened"—and Dr. Morales continued to make medication adjustments. (Doc. 10-3 at 18) Thus, the ALJ fails to show the effectiveness of Plaintiff's mental health treatment was specific and legitimate reason to give less weigh to the limitations

10

identified by Dr. Morales.

3. Inconsistency with the record

The ALJ gave less weight to the opinions of Dr. Morales upon finding they were "highly inconsistent with the findings and opinions of Dr. Cohn, who examined the claimant only several months after she began treatment with Dr. Morales, as well as with those of Dr. Michiel, who examined the claimant only one month prior to Dr. Morales's most recent examination in February 2017." (Doc. 10-3 at 19, citing Exhs. 8F, 11F)

Significantly, when an ALJ believes the conclusions of a physician are contradicted by other evidence in the record, he has a burden to specifically identify the conflicting evidence. *See Cotton v. Bowen*, 799 F.2d at 1408. The Ninth Circuit explained, ("The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). For example, an ALJ may also discount the opinion of a treating physician by identifying an examining physician's findings to the contrary and identifying the evidence that supports that finding. *See, e.g., Creech v. Colvin*, 612 F. App'x 480, 481 (9th Cir. 2015).

The ALJ failed meet this burden because he did not identify the specific clinical findings or the objective evidence that he believed conflicted with the limitations identified by Dr. Morales. Instead, the ALJ merely offered his conclusion that the findings from Drs. Cohn and Morales conflicted with those from Plaintiff's treating psychiatrist. The Court is unable to review the findings of the physicians to cure this defect in the ALJ's analysis. *See* Ortiz v. Colvin, 2016 WL4992674, at *7 (E.D. Cal. Sept. 19, 2016) ("It is not sufficient for the ALJ simply to state that evidence and opinions exist that are contrary to the treating doctor's opinion, leaving it to the court to dig around through the record in search of the unidentified evidence and opinions"). Consequently, the purported inconsistencies with the opinions of the examining physicians do not support the ALJ's decision to give less weight to the limitations identified by Dr. Morales.

**C. Remand is Appropriate**

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court. *Harman v. Apfel*,

211 F.3d 1172, 1178 (9th Cir. 2000). Except in rare instances, when a court reverses an administrative agency determination, the proper course is to remand to the agency for additional investigation or explanation. *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)). Generally, an award of benefits is directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). In addition, an award of benefits is directed where no useful purpose would be served by further administrative proceedings, or where the record is fully developed. *Varney v. Sec'y of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988).

The ALJ failed to resolve conflicts in the record related to Plaintiff's mental impairments and residual functional capacity. The failure to properly reject limitations by Plaintiff's treating physician was not "inconsequential to the ultimate nondisability determination." *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). Accordingly, the matter should be remanded for the ALJ to re-evaluate the medical evidence and determine Plaintiff's residual functional capacity. *See Moisa*, 367 F.3d at 886.

## **CONCLUSION AND ORDER**

For the reasons set for above, the Court finds the ALJ erred in evaluating the medical evidence, and the administrative decision should not be upheld by the Court. *See Sanchez*, 812 F.2d at 510. Accordingly, the Court **ORDERS**:

1. The matter is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision; and
2. The Clerk of Court is **DIRECTED** to enter judgment in favor of Plaintiff Martha Franco, and against Defendant, the Commissioner of Social Security.

IT IS SO ORDERED.

Dated: **March 20, 2020**          **/s/ Jennifer L. Thurston**
UNITED STATES MAGISTRATE JUDGE